UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:97-cr-08125-GAYLES
CASE NO. 9:26-cv-80619-GAYLES

ELWOOD JEROME COOPER,

        Defendant/Movant,

v.

UNITED STATES OF AMERICA,

        Plaintiff/Respondent.

_____/

## OMNIBUS ORDER

**THIS CAUSE** comes before the Court on Defendant Elwood Jerome Cooper's *pro se* Motion to Correct Errors in the Record, to Dismiss the Superseding Indictment, for a Sentence Reduction, and for Compassionate Release (the "Motion"). *See* [CR-ECF No. 220]; [ECF No. 1].[1] Because some of the challenges in the Motion are properly categorized as habeas corpus claims, the Court construes it as seeking two kinds of relief: habeas relief under 28 U.S.C. § 2255 (the "Second 2255 Motion") [ECF No. 1 at 17–24, 28–30], and a sentence reduction and associated criminal relief under 18 U.S.C. § 3582(c) (the "Second 3582 Motion") [CR-ECF No. 220 at 24–27, 31–42]. For the reasons explained below, the Second 2255 Motion is **DISMISSED AS SUCCESSIVE**, and the Second 3582 Motion is **DENIED**.

### I.     BACKGROUND

Defendant is currently incarcerated at Coleman Medium Federal Correctional Institution. *See* [CR-ECF No. 220]. On March 20, 1998, a jury found Defendant guilty of four drug crimes:

---

[1] The Court cites to filings on the criminal docket (Case No. 9:97-cr-08125) using the format [CR-ECF No. xx] and to filings on the civil habeas docket (Case No. 9:26-cv-80619) using the format [ECF No. xx]. In future citations, when a document appears on both dockets, the Court will cite only to the version on the criminal docket.

(1) conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b), 963; (2) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846; (3) importing cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b); and (4) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *See* [CR-ECF Nos. 17, 52]. The superseding indictment did not charge a specific amount of cocaine, *see* [CR-ECF No. 17], but trial evidence showed that the bust leading to Defendant's arrest involved 480 kilograms of the drug, *see* [CR-ECF No. 110 at 18, 45].

Using that drug quantity, the Presentence Investigation Report ("PSR") prepared after Defendant's conviction calculated his base offense level at 38. *See* PSR ¶¶ 12, 22. The PSR recommended a 2-level increase to Defendant's base offense level under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1) because his co-conspirators Kevin Moore and Brian Bethel possessed dangerous weapons (firearms) during the crime, *see id.* ¶ 23, and a 3-level increase under U.S.S.G. § 3B1.1(b) because Defendant was a manager or supervisor of criminal activity involving five or more people, *see id.* ¶ 25. Each of Defendant's four crimes carried a mandatory minimum sentence of 10 years in prison and a maximum sentence of life. *See id.* ¶ 52. Based on a total offense level of 43 and a criminal history category of I, the PSR calculated Defendant's Guidelines range as life imprisonment. *See id.* ¶ 53.

At sentencing, Defendant contended through counsel that he should not receive either enhancement. *See* [CR-ECF No. 110]. As to the weapon enhancement, Defendant argued he "was not at the scene of the firearm" and did not have "actual knowledge of the use of a firearm." *See id.* at 7–8. The government responded that Defendant did not have to see or know about the guns Moore and Bethel used; instead, it just had to be "foreseeable that a member of the conspiracy" would possess a firearm during the course of the conspiracy. *See id.* at 18–19. The government

explained that case law made clear that "when drugs are about, guns are about" for protection. *See id.*

As to the role enhancement, Defendant argued he was a minor participant in the enterprise and not a leader, organizer, manager, or supervisor. *See id.* at 4–6. He asserted his "role was to make a connection between" the actual transporters (who turned out to be government informants) and Bethel, who was "the source of the cocaine." *See id.* at 5. Defendant argued that he did not make decisions and instead simply "responded to directives or requests" from the transporters or Bethel. *See id.* He also argued he did not recruit anyone to the enterprise and did not receive an equal or larger share of the "fruits of the crime." *See id.* at 6. The government countered that Defendant recruited the transporters and mediated their interaction with Bethel to keep the criminal enterprise "moving forward." *See id.* at 14–17. It argued that, without Defendant, the "whole thing would not have occurred." *See id.* at 15.

The Sentencing Court overruled Defendant's objections and imposed the two sentence enhancements. *See id.* at 31–34. On the weapon enhancement, the Court agreed with the government that Defendant did not have to carry the gun himself and found that Moore's and Bethel's possession of guns during a crime involving 480 kilograms of drugs was foreseeable.[2] *See id.* at 31–34, 45. On the role enhancement, the Court found that Defendant "had a very important role" in the enterprise and that, while he was not an organizer or a leader, he was a manager, supervisor, or "coordinator." *See id.* at 32. Having agreed that both enhancements were warranted, the Court recognized that Defendant's total offense level was 43, as the PSR had

---

[2] Defendant's counsel argued "there was not evidence" Defendant knew the quantity of cocaine "would be as high as 300 kilograms," but the Sentencing Court explained that the drug amount was "not a factor" it could consider, even though "maybe it should be." *See* [ECF No. 110 at 35]. The Court was correct because the requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury" and "proved beyond a reasonable doubt" was not recognized until two years after Defendant was sentenced. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

calculated. *See id.* at 32–35. With that total offense level and "no criminal history," the Court explained that it did not "even have a range now" and that "the only sentence" permissible under the Guidelines was life imprisonment. *See id.* at 35–36. Accordingly, the Court sentenced Defendant to life without parole for each of his four crimes, to run concurrently. *See id.* at 35, 46; [CR-ECF No. 86].

In the years since then, Defendant has challenged his convictions and sentence many times. The Court details here only those challenges relevant to the current Motion. First, Defendant appealed his convictions and sentence to the Eleventh Circuit, which affirmed them. *See* [CR-ECF No. 118]. Relevant here, on direct appeal Defendant challenged the 3-level role enhancement and the "validity of his sentence under *Apprendi*."[3] *Id.* at 4. The Eleventh Circuit affirmed the role enhancement because Defendant "arranged transportation for the cocaine, managed communications between the supplier and the transporters, and assisted in loading the boat for the first attempt to transport the cocaine to Florida." *Id.* at 10. And it upheld Defendant's sentence despite *Apprendi* because, even though the failure to allege and prove a specific drug quantity was plain error, the error did not affect his substantial rights. *Id.* at 7–9. It did not affect his substantial rights because the government prosecuted the case as "all or nothing," which meant the jury had only two choices: find Defendant was "responsible for a massive amount of cocaine or for none at all." Because no reasonable jury could have convicted Defendant without also finding that he possessed "at least five kilograms of cocaine," which was the amount "necessary to trigger the enhanced penalty provisions" in § 841(b)(1)(A), the *Apprendi* issue did not affect his sentence. *See id.*

---

[3] He also attempted to challenge the sufficiency of the evidence supporting his convictions, but the Eleventh Circuit declined to consider it because Defendant did "not raise the issue in his own brief." *See* [CR-ECF No. 118 at 4–5].

Defendant then filed a Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 (the "First 2255 Motion"). *See* 2255 Motion, *Cooper v. United States*, No. 9:03-cv-80401-KLR (S.D. Fla. May 19, 2003), Dkt. No. 1. He asserted eleven grounds; relevant here, he challenged the sufficiency of the evidence supporting his convictions. *See* R.&R., *Cooper v. United States*, No. 9:03-cv-80401-KLR (S.D. Fla. Apr. 22, 2005), Dkt. No. 27. A Magistrate Judge rejected Defendant's sufficiency claim because he had "admitted his participation in the offense" and was caught on tape actively participating. *See id.* at 11–12. The Magistrate Judge recommended denying the 2255 Motion, *see id.* at 16, and the Court adopted that recommendation, *see* Final J., *Cooper v. United States*, No. 9:03-cv-80401-KLR (S.D. Fla. May 9, 2005), Dkt. No. 28. Neither the Court nor the Eleventh Circuit granted Defendant a Certificate of Appealability. *See* Order, *Cooper v. United States*, No. 9:03-cv-80401-KLR (S.D. Fla. Sept. 16, 2005), Dkt. No. 38; *Cooper v. United States*, No. 05-14922 (11th Cir. Mar. 29, 2006).

Next, Defendant filed a Motion for a Reduction in Sentence under § 3582 (the "First 3582 Motion"). *See* [CR-ECF No. 179]. Defendant asserted that Amendment 782, which reduced the maximum base offense level for all drug types and was made retroactive by the U.S. Sentencing Commission, would lower his Guidelines range to 324 to 405 months' imprisonment. *See id.* at 8–10. He argued for an even lower sentence, noting that a jury had not found the quantity of drugs attributable to him and that his co-conspirators had received shorter sentences despite having greater culpability. *See id.* at 9–27. The Court denied the First 3582 Motion because, based on 480 kilograms of cocaine and weapon/role enhancements, Amendment 782 did not change Defendant's total offense level; so, his "advisory sentencing guideline remain[ed] life imprisonment." *See* [CR-ECF No. 183 at 3]; [CR-ECF No. 184]. The Eleventh Circuit affirmed the denial, agreeing that Amendment 782 did not change Defendant's Guidelines range because his crime "involved 450 kilograms or more of cocaine" and, therefore, "the district court had no authority under

- 5 -

§ 3582(c)(2) to reduce his sentence."[4] *United States v. Cooper*, 733 F. App'x 964, 967 (11th Cir. 2018).

Finally, Defendant filed the Motion. *See* [CR-ECF No. 220]. In it, he asks the Court to: (1) "correct clerical and constitutional errors" in the PSR and "other parts of the record" using Federal Rule of Criminal Procedure 36; (2) dismiss the superseding indictment using Federal Rule of Criminal Procedure 6(e) and Federal Rule of Civil Procedure 48(a); and (3) reduce his sentence "to time served and compassionate release" under § 3582 based on Amendment 821, U.S.S.G. § 4C1.1, U.S.S.G. § 1B1.13, and the factors listed in 18 U.S.C. § 3553(a). *See* [CR-ECF No. 220 at 1]. Defendant argues these remedies are warranted because: (1) the Sentencing Court failed to calculate his Guidelines range itself during the sentencing hearing; (2) the Court relied on incorrect PSR facts when enhancing his sentence; (3) his indictment was defective; (4) the trial evidence was insufficient to convict him; and (5) recent changes to the Guidelines support reducing his sentence or granting him compassionate release based on his lack of criminal history, specific offense characteristics, and "unusually long" sentence. *See id.* at 17–43.

## II. DISCUSSION

Defendant frames the Motion as one seeking relief under several federal rules of procedure, Sentencing Guidelines provisions, and federal statutes. *See id.* Defendant does not include § 2255, the habeas corpus statute applicable to federal prisoners, among them. *See id.* But "[f]ederal courts are obligated to look beyond the label of a *pro se* inmate's motion to determine if it is cognizable under a different statutory framework." *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th

---

[4] The Eleventh Circuit acknowledged Defendant's argument that the Sentencing Court did not find him "responsible for 480 kilograms of cocaine," but it explained that it "must treat the PSR as conclusively establishing the drug quantity involved in the offense because" he "failed to object to the portion of the PSR setting forth the drug quantity." *See Cooper*, 733 F. App'x at 967. The Eleventh Circuit also concluded that the Sentencing Court "expressly found" the "offense involved 480 kilograms of cocaine," both at the sentencing hearing and in its "written Statement of Reasons" adopting the facts in the PSR. *Id.* at 968.

Cir. 2003). And the Supreme Court has instructed that when a party asserts "there exist or do not exist grounds entitling" him "to habeas corpus relief," or he "asserts that a previous ruling regarding one of those grounds was in error," he "is making a habeas corpus claim." *See Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005).

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," *Muhammad v. Close*, 540 U.S. 749, 750 (2004), so is any claim "imply[ing] the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement," *see id.* at 751. This includes claims challenging the validity of an indictment. *See Bauman v. United States*, 156 F.2d 534, 537 (5th Cir. 1946) (holding a judgment that is void because of a defective indictment "could be attacked at any time" by "a proceeding in habeas corpus"); *cf. Fernandez v. United States*, 608 U.S. ___, No. 24-556, 2026 WL 1485476, at *3 (May 28, 2026) ("A prisoner who collaterally attacks the validity of his conviction must proceed through 28 U.S.C. § 2255, not 18 U.S.C. § 3582."). It includes claims attacking statements in a PSR. *See Lightbourne v. Dugger*, 829 F.2d 1012, 1027 (11th Cir. 1987) (evaluating in a habeas petition an ineffective assistance claim that trial counsel failed "to object to the trial judge's consideration of the statements in the [PSR]"). Logically, it also includes the failure to calculate the Guidelines range correctly, as that is a particular affecting the duration of confinement. *See Muhammad*, 540 U.S. at 750; *cf. United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005) (recognizing that, both before and after *United States v. Booker*, 543 U.S. 220 (2005), "the district court must calculate the Guidelines range accurately"); *Peugh v. United States*, 569 U.S. 530, 537 (2013) ("Failure to calculate the correct Guidelines range constitutes procedural error.").

Applying these principles to the Motion, it is clear that most of Defendant's claims are, in reality, habeas claims. Specifically, Defendant's challenges to the contents of his PSR, the

Sentencing Court's calculation of his Guidelines range (including its decision to apply weapon and role enhancements), his indictment, and the sufficiency of the trial evidence all target the validity of his underlying conviction, his confinement, its duration, or a particular ground for denying early release. *See Muhammad*, 540 U.S. at 750–51. For that reason, those claims "are the province of habeas corpus," *see id.* at 750; *Gonzalez*, 545 U.S. at 532 n.4, and the Court will analyze them under the habeas requirements of § 2255, *see Stossel*, 348 F.3d at 1322 n.2.[5]

### A.  Second 2255 Motion

A federal prisoner in custody may use § 2255 to ask the court that sentenced him "to vacate, set aside or correct" his sentence if the sentence "was imposed in violation of the Constitution or laws of the United States," the "court was without jurisdiction to impose such sentence," the "sentence was in excess of the maximum authorized by law, or" the sentence "is otherwise subject to collateral attack." *See* 28 U.S.C. § 2255(a). A court typically cannot entertain a § 2255 motion, however, if the prisoner has already sought § 2255 relief and the "court has denied him" that relief. *See id.* § 2255(e); *id.* § 2244(a); *Fernandez*, 2026 WL 1485476, at *5 ("Claims that have already been raised and rejected on direct review typically cannot be relitigated in § 2255 motions."). Nor can a court typically entertain habeas claims a prisoner could have brought, but did not bring, in his first habeas motion. *See McCleskey v. Zant*, 499 U.S. 467, 489 (1991) ("[A] petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice."); *Fernandez*,

---

[5] As Respondent points out, *see* [CR-ECF No. 250 at 8–9], Defendant's challenge under Rule 36 would fail regardless because "Rule 36 may not be used to make a substantive alteration to a criminal sentence," *see United States v. Portillo*, 363 F.3d 1161, 1164 (11th Cir. 2004) (quotation marks omitted). It is intended to fix "clerical" mistakes that are "minor and mechanical in nature." *Id.* at 1165. The purported errors to his sentence, which Defendant argues stem from substantive inaccuracies in the PSR, *see generally* [CR-ECF No. 220], do not fit that definition. Similarly, neither Rule 48(a) nor Criminal Rule 6(e) supports dismissing the superseding indictment. See Fed. R. Civ. P. 48(a) (setting out the number of jurors required in a civil trial); Fed. R. Crim. P. 6(e) (describing when a grand jury proceeding can be recorded and disclosed).

2026 WL 1485476, at *5 ("[C]laims *not* raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." (quotation marks omitted)).

With a limited exception not applicable here,[6] a "second or successive motion must be" preauthorized by a court of appeals. *See* 28 U.S.C. § 2255(h). "Without such authorization, the district court must dismiss a second or successive § 2255 petition for lack of jurisdiction." *Armstrong v. United States*, 986 F.3d 1345, 1347 (11th Cir. 2021). A court of appeals cannot authorize a "second or successive motion" unless it contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *See* 28 U.S.C. § 2255(h); *Bowe v. United States*, 607 U.S. 13, 39 (2026) ("[W]hen a federal prisoner moves for authorization, a panel can authorize the filing if it satisfies one of the two grounds in § 2255(h), the two—and only two—conditions in which a second or successive § 2255 motion may proceed." (quotation marks omitted)).

As explained above, several of Defendant's claims in the Motion are, in effect, habeas corpus claims. Two of those claims—the Sentencing Court's application of a manager role enhancement and the sufficiency of the trial evidence—have already been decided against him on direct appeal and in the First 2255 Motion, respectively. *See supra* Part I. As for the other four claims—purported errors in his PSR, the Sentencing Court's alleged failure to calculate his Guidelines range at his hearing, the weapon enhancement, and the validity of his indictment—Defendant appears not to have raised them on direct appeal or in the First 2255 Motion. That failure

---

[6] The exception applies if it "appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of [a prisoner's] detention." *See* 28 U.S.C. § 2255(e). Defendant does not argue, and the Court declines to find, that exception applies here.

does not automatically mean this Court can consider those claims now, however, because he could have raised them in either of those earlier proceedings. *See McCleskey*, 499 U.S. at 489.

Defendant has already filed one § 2255 motion, and he is not challenging "a new and intervening judgment." *See Armstrong*, 986 F.3d at 1347. That makes the habeas claims in the Motion successive. *See id.* Defendant has not sought or received permission from the Eleventh Circuit to file a successive 2255 motion, so the Court must dismiss those claims unless he can meet the requirements of § 2255(h). *See id.* He cannot.

First, the Motion contains no newly discovered evidence sufficient to establish by a clear and convincing standard that no reasonable factfinder would have found Defendant guilty of his four drug crimes. *See* 28 U.S.C. § 2255(h); *Bowe*, 607 U.S. at 39. Although Defendant recites facts about the scope of the drug enterprise that he argues are "newly developed post-conviction," including about who played high-up roles in the organization, *see* [CR-ECF No. 220 at 16], they do not support a conclusion that no reasonable factfinder would have found him guilty of his crimes. To the extent Defendant argues that the facts show he is "innocent" of a managerial role, they do not do that either. Facts showing other members of the enterprise were higher-ranking than Defendant do not invalidate a conclusion that Defendant was a manager in his charged conspiracy.

Similarly, Defendant recites facts about a purported lack of "country clearance" from the Bahamas, and he argues those facts invalidate his conviction because, without clearance, the government-informant transporters did not have authority to bring the cocaine that led to his conviction from the Bahamas into the United States, making it "fruit of a crime." *See* [CR-ECF No. 220 at 21–22]. He also argues that the Bahamas' dismissal of charges against Bethel "nullif[ied] the conspiracy." *Id.* at 23. But as Respondent points out, the evidence Defendant offers to prove these alleged facts—a letter from the Bahamian Attorney General's Office—states only that "its records check did not reveal any instances in which" Defendant "was listed as the subject

- 10 -

of any international investigation between the United States and the Bahamian Law Enforcement Authorities." *See* [CR-ECF No. 250 at 2]. "The letter makes no mention of whether the United States government obtained country clearance during the investigation" of Defendant. *See id.*

Respondent's reading of the letter comports with the Court's findings in its Order denying the First 2255 Motion. *See* R.&R. at 6, *Cooper v. United States*, No. 9:03-cv-80401-KLR (S.D. Fla. Apr. 22, 2005), Dkt. No. 27. In that Order, the Court concluded after "a thorough reading" of the trial "transcript in its entirety" that the U.S. government "had received clearance from the Bahamian government to enter the jurisdiction as part of the operation" targeting Defendant. *See id.* Indeed, even the trial testimony Defendant includes in the Motion itself shows that the government "received country clearance" from the "country attache" and the "central authority for the Bahamas" on November 5, 1997, well before the cocaine was loaded on November 8 and 9 and arrived in the United States on November 11. *See* [CR-ECF No. 220 at 5–6].

The Court also concluded "the record is clear" that Defendant "conspired not only with" the government-informant transporters but also with Bethel, Moore, and "several other individuals." *See id.* at 13. The trial testimony, the Motion, and the Court's 2005 findings all demonstrate, at minimum, that Defendant's evidence is not new.[7] Nor does it support a conclusion that no reasonable factfinder would have found him guilty of his crimes. So, Defendant has failed to meet the first prong of § 2255(h). *See Bowe*, 607 U.S. at 39.

To get § 2255 relief here, then, Defendant must show that his case has been impacted by a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. *See id.*; 28 U.S.C. § 2255(h). But Defendant does not

---

[7] Defendant does not offer any additional evidence on his PSR error claim, his Guidelines range calculation claim, or his weapon enhancement claim. *See generally* [CR-ECF No. 220]. Accordingly, he fails to meet the first prong of § 2255(h) on those claims. *See Bowe*, 607 U.S. at 39. In any event, the record demonstrates that the PSR was accurate, the Sentencing Court adopted the PSR (including the Guidelines calculations), the Court calculated the Guidelines range at the hearing, and the Court properly applied the weapon enhancement. *See* [CR-ECF No. 110].

identify any Supreme Court decision that was decided after the denial of his First 2255 Motion, is retroactively applied to 2255 claims, and would support granting him habeas relief. *See generally* [CR-ECF No. 220]. The closest he comes is a brief reference to *Apprendi*, *Booker*, and *Alleyne v. United States*, 570 U.S. 99, 102 (2013), *see* [CR-ECF No. 220 at 41], but none of those decisions has been made retroactively applicable on collateral review. *See Kaufmann v. United States*, 282 F.3d 1336, 1337 (11th Cir. 2002) (*Apprendi* is not retroactive); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (*Booker* is not retroactive); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014) (*Alleyne* is not retroactive).

Even if those decisions were retroactive, they would not help Defendant. The Eleventh Circuit has recognized that *Booker* and *Alleyne* are "extensions of *Apprendi*," *see United States v. King*, 751 F.3d 1268, 1278–79 (11th Cir. 2014), and that Court rejected Defendant's *Apprendi* claim on direct appeal because he failed to show that the error affected his substantial rights, *see* [CR-ECF No. 118 at 7–9]. Defendant has not explained how that result would be any different under *Booker* or *Alleyne*. *See generally* [CR-ECF No. 220]. Defendant has therefore failed to meet the second prong of § 2255(h). *See Bowe*, 607 U.S. at 39. Because the prongs of § 2255(h) are the only two conditions in which a second or successive § 2255 motion may proceed, *see id.*, the Court must dismiss the Second 2255 Motion for lack of jurisdiction, *see Armstrong*, 986 F.3d at 1347.

### B.  Second 3582 Motion

Defendant's remaining claims seek relief under 18 U.S.C. § 3582(c). Specifically, Defendant contends that recent changes to the Guidelines support reducing his sentence or granting him compassionate release based on his lack of criminal history, specific offense characteristics, and unusually long sentence.

"A district court has no inherent authority to modify a defendant's sentence and may do so only when authorized by a statute or rule." *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir.

2021) (quotation marks omitted). "[A]s a congressional act of lenity, Section 3582(c) authorizes three narrow sentence-modification proceedings." *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021), *superseded in part on other grounds by* U.S.S.G. § 1B1.13 (2023). Two of those proceedings are relevant here. First, "§ 3582(c)(2) authorizes a court to reduce" a defendant's sentence if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and "such a reduction is consistent with applicable Commission policy statements." *See Dillon v. United States*, 560 U.S. 817, 819 (2010) (quotation marks omitted). The Commission policy statement applicable to § 3582(c)(2) is found in U.S.S.G. § 1B1.10, *see id.* at 826, which lists the amendments to the Guidelines Manual that can support a reduction under that subsection, *see* U.S.S.G. § 1B1.10(d).

Second, § 3582(c)(1)(A) authorizes what is "commonly referred to as 'compassionate release.'" *Rutherford v. United States*, 608 U.S. ___, No. 24–820, 2026 WL 1485535, at *3 (May 28, 2026). That section permits a court to reduce a term of imprisonment if it finds that "(1) extraordinary and compelling reasons warrant such a reduction, (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, and (3) § 3553(a) sentencing factors weigh in favor of a reduction." *See Giron*, 15 F.4th at 1346 (quotation marks omitted). The extraordinary and compelling reasons language in § 3582(c)(1)(A)(i) "is a demanding standard." *Fernandez*, 2026 WL 1485476, at *7. "Congress did not specify what extraordinary and compelling reasons might warrant compassionate release," but it authorized "the Commission to promulgate policy statements that" do so, "including the criteria to be applied and a list of specific examples." *See Rutherford*, 2026 WL 1485535, at *4 (quotation marks omitted). The Commission did that in U.S.S.G. § 1B1.13. *See id.*; *Giron*, 15 F.4th at 1346.

- 13 -

### 1. Sentence Reduction under § 3582(c)(2)

Defendant argues he is eligible for both a sentence reduction under § 3582(c)(2) and compassionate release under § 3582(c)(1)(A). *See* [CR-ECF No. 220]. He bases his § 3582(c)(2) argument on Amendment 821 to the Sentencing Guidelines, which "went into effect in November of 2023" and "modified Chapter 4 of the Guidelines by adding U.S.S.G. § 4C1.1—titled Adjustment for Certain Zero-Point Offenders." *United States v. Lombardi*, No. 24-11376, 2025 WL 2254184, at *3 (11th Cir. Aug. 7, 2025). The Supreme Court has instructed that § 3582(c) "establishes a two-step inquiry." *Dillon*, 560 U.S. at 826. "A court must first determine that a reduction is consistent with § 1B1.10." *Id.* When doing so, the court must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. If the prisoner is eligible for a reduction, the court may then "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in" 18 U.S.C. § 3553(a). *See id.* at 826.

Here, Defendant fails at step one. Although Defendant had zero criminal history points when he was originally sentenced, and "Amendment 825 made the U.S.S.G. § 4C1.1(a) portion of Amendment 821 retroactively applicable under U.S.S.G. § 1B1.10(d)," § 4C1.1(a) "provides for a decrease in the offense level" only "if the defendant satisfies ten criteria." *See Lombardi*, 2025 WL 2254184, at *3. To satisfy those ten criteria, Defendant must show, among other things, that he "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense," U.S.S.G. § 4C1.1(a)(7), and "did not receive an adjustment under § 3B1.1 (Aggravating Role)," *id.* § 4C1.1(a)(10). Defendant cannot do so.

As explained in Part I, Defendant received both a 2-level increase to his base offense level under § 2D1.1(b)(1) because his co-conspirators, Moore and Bethel, possessed dangerous weapons

during the crime, *see* PSR ¶ 23, and a 3-level increase to his base offense level under § 3B1.1(b) because Defendant was a manager or supervisor of criminal activity involving five or more people, *see* PSR ¶ 25. While the weapon enhancement does not preclude relief under § 4C1.1(a)(7) because Defendant did not personally possess a firearm, *see United States v. Giannantonio*, No. 24-14040, 2026 WL 552804, at *6 (11th Cir. Feb. 27, 2026), the role enhancement under § 3B1.1(b) yields a different result. Because § 4C1.1(a)(10) explicitly requires Defendant to not have received an adjustment under § 3B1.1, and Defendant did in fact receive an adjustment under § 3B1.1(b), he is not eligible for a decrease in his offense level under the Zero Point Offender provision. *See Lombardi*, 2025 WL 2254184, at *3.

### 2. Compassionate Release under § 3582(c)(1)(A)

Defendant bases his § 3582(c)(1)(A) argument on § 1B1.13(6), which authorizes compassionate release if a defendant "received an unusually long sentence," has "served at least 10 years of the term of imprisonment," and "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) . . . would produce a gross disparity between the sentence being served and the sentence likely to be imposed" when a § 3582(c)(1)(A) motion is filed. *See* [CR-ECF No. 220 at 40–42]. The Sentencing Commission added the unusually long sentence "category to the list of 'extraordinary and compelling' reasons" in 2023. *See Rutherford*, 2026 WL 1485535, at *5. Before 2023, "the Sentencing Commission highlighted essentially three grounds for compassionate release: (1) medical condition, (2) age, and (3) family circumstances." *See id.* at *7 (footnote omitted).

Just last week, the Supreme Court evaluated the validity of § 1B1.13(6). *See generally id.* In *Rutherford*, the Court considered whether a "sentencing disparity created by Congress's nonretroactive change to" 18 U.S.C. § 924(c)'s "mandatory penalties can serve as an extraordinary and compelling reason that warrants" compassionate release under § 3582(c)(1)(A)(i). *Id.* at *3.

The Court held that it does not, as "a nonretroactive penalty change necessarily creates a disparity between those who receive the benefit and those who do not," and "[s]uch a disparity is an unexceptional feature of a system in which nonretroactivity is the default." *See id.* at *7. The Court found that "[t]reating the disparity resulting from § 924(c)'s amendment as a compelling reason for reducing a sentence would undermine Congress's choice to leave the sentence intact" and "fall well outside the heartland of compassionate release, which has long been defined by a prisoner's personal circumstances." *See id.* The disparity resulting from § 924(c)'s amendment does not qualify as an extraordinary and compelling reason under § 1B1.13(6) because it "tracks ordinary sentencing practice and reflects Congress's deliberate choice to extend relief to some prisoners and not others." *See id.* at *8.

To reach its holding, the *Rutherford* Court relied heavily on "*Congress's decision* to leave a sentence untouched." *See id.* at *11 (emphasis added). That reliance—coupled with an acknowledgement that it "need not nail down the precise boundaries of the phrase extraordinary and compelling to conclude that with regard to the particular dispute" in *Rutherford*, § 3582(c)(1)(A)(i)'s "language has a plain and unambiguous meaning," *see id.* at *10 (quotation marks omitted)—suggests the Court did not intend to invalidate § 1B1.13(6) altogether. It suggests there might be room within § 1B1.13(6) to consider "nonretroactive legal changes in certain circumstances," *see id.*, such as where the decision about nonretroactivity is made not by Congress but by the Court itself. In a companion case issued the same day, however, the Court made clear that such a distinction is irrelevant. *See Fernandez*, 2026 WL 1485476, at *8 n.5. The Court noted, unambiguously, that the 2023 amendment responsible for adding unusually long sentences to the list of extraordinary and compelling reasons that support compassionate release "exceeds the Commission's authority." *See id.*

The *Rutherford* holding, as clarified by *Fernandez*, forecloses compassionate release here. The only provision of § 1B1.13 that Defendant cites to support his request for compassionate release is § 1B1.13(6), *see* [CR-ECF No. 220 at 34–35], which (at least as far as "nonretroactive change[s] to sentencing law" are concerned) is no longer valid after *Rutherford*, *see* 2026 WL 1485535, at *6. Similarly, the only "intervening changes in the law since his conviction and sentence" Defendant offers were wrought by *Apprendi*, *Booker*, and *Alleyne*, *see* [CR-ECF No. 220 at 34–35], none of which is retroactively applicable on collateral review, *see Kaufmann*, 282 F.3d at 1337; *Varela*, 400 F.3d at 868; *Harris*, 741 F.3d at 1250 n.3. Because Defendant does not argue that a valid provision of § 1B1.13—a provision "tied" to his "personal circumstances" like "age, illness, [or] a child left with no guardian," *see Fernandez*, 2026 WL 1485476, at *8; *Rutherford*, 2026 WL 1485535, at *7—entitles him to compassionate release, and because he does not identify a retroactive change to sentencing law that applies here, he is not "part of the limited class of prisoners who are eligible" under § 3582(c)(1)(A)(i). *See Rutherford*, 2026 WL 1485535, at *9 (alteration adopted, quotation marks omitted).

For those reasons, Defendant cannot surmount the "gatekeeping requirement" of § 3582(c)(1)(A)(i), which is "a distinct analytical step that imposes independent and ascertainable limits on access to compassionate release." *See id.* Accordingly, the Court cannot consider whether compassionate release is warranted based on Defendant's "individualized circumstances" under the § 3553(a) factors. *See id.* (explaining that a defendant must pass the gatekeeping requirement before a court can determine "the extent of a reduction based on the § 3553(a) factors"); U.S.S.G. § 1B1.13(b)(6). While the Court is greatly concerned about the unwarranted sentencing disparities involved here,[8] those concerns cannot overcome a clear directive from Congress and the Supreme

---

[8] The drug trafficking enterprise in which Defendant participated included many co-conspirators. *See, e.g.*, [CR-ECF No. 268 at 12–15]. Among them are participants who played more significant roles than Defendant did, including Bethel (who supplied the cocaine), Moore (who accompanied the cocaine to the United States), and Samuel Knowles

Court. Under those directives, Defendant is not entitled to compassionate release at this time, so the Court must deny the Second 3582 Motion.

### III.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The Second 2255 Motion, [ECF No. 1], is **DISMISSED AS SUCCESSIVE**.

   Specifically, the Court **DISMISSES** Defendant's claims regarding:

   a. the Sentencing Court's application of a manager role enhancement;
   b. the Sentencing Court's application of a weapon enhancement;
   c. purported errors in his PSR;
   d. the Sentencing Court's alleged failure to calculate his Guidelines range at his hearing;
   e. the validity of the superseding indictment; and
   f. the sufficiency of the trial evidence.

2. The Second 3582 Motion, [CR-ECF No. 220], is **DENIED**.

3. The Clerk is **DIRECTED** to mail a copy of this Order to Defendant.

4. The cases are **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of June, 2026.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:

**Elwood Jerome Cooper**
31271-004

---

(who the government described as "the leader of a multinational drug trafficking organization"). *See id.* Of these participants, only Defendant received a sentence of life imprisonment without parole. *See id.* Bethel received an initial sentence of 60 months, *see* Final J., *United States v. Bethel*, No. 1:00-cr-01091-DMM-2 (July 19, 2001), Dkt. No. 137, which was later reduced to 48 months, *see* Amended J., *United States v. Bethel*, No. 1:00-cr-01091-DMM-2 (Jan. 23, 2004), Dkt. No. 350. Moore received an initial sentence of 420 months, *see* Final J., *United States v. Moore*, No. 9:97-cr-08125-DPG-1 (Sept. 14, 1998), Dkt. No. 84, which was later reduced to 240 months, *see* Amended J., *United States v. Moore*, No. 9:97-cr-08125-DPG-1 (Sept. 23, 2002), Dkt. No. 132. Knowles received a sentence of 420 months, *see* Final J., *United States v. Knowles*, No. 1:00-cr-00425-JIC-6 (May 30, 2008), Dkt. No. 246, despite the government requesting life imprisonment, *see* [CR-ECF No. 268 at 14], and despite former President George W. Bush designating him a "foreign narcotics kingpin," *see United States v. Knowles*, 390 F. App'x 915, 917 n.2 (11th Cir. 2010).

- 18 -

Coleman Medium Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1032
Coleman, FL 33521
*PRO SE*

**Noticing 2255 US Attorney**
Email: usafls-2255@usdoj.gov

**Ellen L Cohen**
**Mark Dispoto**
United States Attorney's Office
Email: Ellen.Cohen@usdoj.gov
Email: mark.dispoto@usdoj.gov